UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
BRIGHT U. IRABOR,                       )
                                        )
            Plaintiff,                  )   Civil Action No.
                                        )   19-12087-FDS
      v.                                )
                                        )
LUFTHANSA AIRLINES,                     )
                                        )
            Defendant.                  )
_____)

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND

SAYLOR, J.

This is a lawsuit arising out of an airline's refusal to board a passenger. Plaintiff Bright Irabor has filed suit against defendant Lufthansa Airlines based on a variety of state-law claims.

In March 2018, Irabor bought a Lufthansa ticket for a round trip from Boston to Lagos, Nigeria, through a travel agent, Liliya Pivovarov. At the time, Irabor's United States permanent resident card had expired. When she sold him the ticket, Pivovarov allegedly told Irabor that he could make the trip using a notice of receipt of a request for extension of a permanent resident card from U.S. immigration authorities.

In April 2018, because of a strike by Lufthansa personnel, Lufthansa arranged for Irabor to fly to Nigeria on a United Airlines flight instead. He traveled to Nigeria without incident. However, on his return trip to Boston, Lufthansa personnel in Nigeria refused to permit him to board his flight because they said that his travel documents were not acceptable.

Irabor originally filed a complaint against both Lufthansa and Pivovarov in Essex County Superior Court on March 13, 2019. On September 10, 2019, the Superior Court dismissed

Pivovarov from the case for lack of personal jurisdiction.

On October 8, 2019, Lufthansa removed the case to this Court on the grounds of diversity jurisdiction and federal-question jurisdiction. Irabor has moved to remand the case to the Superior Court, and also seeks his costs and attorney's fees incurred in connection with the motion.

For the following reasons, the motion will be granted as to the remand to state court, but the request for costs and attorney's fees will be denied.

## I.  Background

### A.  Factual Background

The facts are stated as set forth in the complaint and the notice of removal.

Bright U. Irabor is a resident of North Andover, Massachusetts. (Compl. ¶ 1). Lufthansa Airlines is an airline that services Boston Logan International Airport. (*See* Compl. ¶ 2; Notice of Removal ¶ 3). Liliya Pivovarov is a travel agent with offices in Lynn, Massachusetts. (Compl. ¶ 3).

On March 5, 2018, Irabor bought a Lufthansa ticket for a round trip from Boston to Lagos, Nigeria, through Pivovarov. (Compl. ¶ 5). At the time he bought the ticket, his U.S. permanent resident card had expired. He had applied for an extension, however, and had received a notice from U.S. Citizenship and Immigration Services acknowledging receipt of his application. (*See id.* ¶ 6).[1]

---

[1] There are two types of permanent residency status: ordinary and conditional. *See* U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *Conditional Permanent Residence*, https://www.uscis.gov/green-card/after-green-card-granted/conditional-permanent-residence (last visited Dec. 5, 2019) (archived at https://perma.cc/WKJ5-WLKT). The differences between the two types may affect what documents are necessary to reenter the United States. *See* U.S. CITIZENSHIP AND IMMIGRATION SERVS., CARRIER INFORMATION GUIDE 2 (Feb. 2019), archived at https://perma.cc/2ABM-7MQW. It is not clear from the present record which type of permanent residency plaintiff had in April 2018, but it does not appear to matter for present purposes.

Irabor asked Pivovarov if Lufthansa would allow him to travel between the United States and Nigeria using those documents. (*Id.* ¶ 5). According to the complaint, Pivovarov said yes. (*Id.*). Irabor then bought round-trip tickets for a flight leaving on April 9, 2018, and returning on April 22, 2018. (*See id.* ¶¶ 7, 8).

On April 9, 2018, Lufthansa airline personnel were on strike. Lufthansa arranged for Irabor to fly to Nigeria aboard a United Airlines flight. (*Id.* ¶ 7). He traveled to Nigeria without incident. (*Id.*).

On April 22, 2018, Irabor tried to board his return flight at Muritala International Airport in Lagos, Nigeria. (*Id.* ¶ 8). According to the complaint, Lufthansa personnel refused to permit him to board the flight because they said that his travel documents were not acceptable. (*Id.*). Unable to board his flight as planned, he booked a hotel for the night and bought a return ticket to the United States from Air France. (*Id.* ¶¶ 9-10). Because he did not have enough money to pay for the ticket, he was forced to borrow money from a private lender in Lagos. (*Id.*).

**B.     Procedural Background**

Irabor filed this action in Essex County Superior Court on March 13, 2019. The complaint alleges that defendants Lufthansa Airlines and Liliya Pivovarov are liable under Massachusetts law for conversion (Count 1); breach of contract (Count 2); breach of the implied covenant of good faith and fair dealing (Count 3); unfair methods of competition and/or unfair or deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A, § 2 (Count 4); negligent misrepresentation (Count 5); and intentional or reckless infliction of emotional distress (Count 6).

On June 13, 2019, Liliya Pivovarov moved to dismiss the complaint against her for insufficiency of service of process and lack of personal jurisdiction. On September 10, 2019, the Superior Court granted the motion based on lack of personal jurisdiction and dismissed the

complaint against her without prejudice. However, the court gave Irabor 30 days to refile the complaint against Pivovarov and to effect service.

On October 8, 2019, Lufthansa removed to this Court on the grounds of both diversity and federal-question jurisdiction. By that time, Irabor had not refiled the complaint against Pivovarov and had not served her.

## II.     Legal Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

A case removed from state court must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The removing defendant bears the burden of demonstrating the subject-matter jurisdiction of the federal court. *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999). "The removal statute is strictly construed, and any doubts about the propriety of removal are resolved in favor of remand to the state forum." *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 321, 327 (D. Mass. 2015).

### A.     Diversity Jurisdiction

As set forth in 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." "This statutory grant requires *complete* diversity between the plaintiffs and defendants in an action." *Picciotto v. Continental Cas. Co.*, 512 F.3d 9, 17 (1st Cir. 2008) (emphasis omitted) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *Halleran v. Hoffman*, 966 F.2d 45, 47 (1st Cir. 1992)).

1.  **Amount in Controversy**

Under 28 U.S.C. 1446(c)(2), the amount in controversy is the amount claimed in the plaintiff's initial complaint. If that complaint "demands monetary relief of a stated sum, that sum . . . is 'deemed to be the amount in controversy.'" *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014). If that sum exceeds $75,000, then the court assumes that the amount-in-controversy requirement is satisfied unless it is shown to a "legal certainty" that amount cannot be recovered. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *see, e.g.*, *Archila v. Integon Nat'l Ins. Co.*, 2017 WL 5633103 (D.R.I. Nov. 21, 2017).

Here, the complaint itself does not allege a specific amount of damages. However, the civil cover sheet to the original complaint specifies damages of $77,500—$31,750 for plaintiff's tort claims and $45,750 for his contract claims. (Civil Action Cover Sheet (Dkt. No. 7 at 17)). "To be sure, civil cover sheets are inherently imprecise, and the extent of a civil cover sheet's role in determining the amount in controversy is not settled in this Circuit." *Toro v. CSX Intermodal Terminals, Inc.*, 199 F. Supp. 3d 320, 324 (D. Mass. 2016); *see also Williams v. Toys "R" Us – Del., Inc.*, 2016 WL 5723588, at *1-2 (D. Mass. Sep. 28, 2016) ("[A] civil cover sheet may provide evidence of the amount in controversy, [but] is not in itself dispositive.") (internal quotations omitted). For present purposes, the Court will assume that defendant has satisfied the amount-in-controversy requirement by reference to the civil cover sheet.

2.  **Diversity of Citizenship**

There is diversity of citizenship between plaintiff, who appears to be domiciled in Massachusetts, and Lufthansa, which is almost certainly a citizen of Germany. (*See* Compl. ¶ 1; Notice of Removal ¶ 3).[2] However, Liliya Pivovarov, who was a defendant in this case when it

---

[2] Plaintiff contends that defendant is a citizen of Massachusetts because it has a registered office in the state, and thus has its principal place of business here. (Pl. Reply at 1, Ex. A). *See* 28 U.S.C. § 1332(c)(1). But a

was filed, appears to be a citizen of Massachusetts.

Pivovarov's citizenship matters for the purposes of diversity jurisdiction despite her dismissal from the case. That is because of the so-called "voluntary-involuntary" doctrine, which provides that "when a case is not removable at the time it is filed, but becomes facially removable at a later date because of the dismissal of a non-diverse defendant, removal is authorized only if diversity results from a voluntary act of the plaintiff." *Five Star Quality Care, Inc. v. Sunrise Senior Living, Inc.*, 2009 WL 1456303, at *1 (D. Mass. May 22, 2009); *see also Self v. General Motors Corp.*, 588 F.2d 655, 658-59 (9th Cir. 1978). In other words, if the non-diverse defendant "was dismissed from the case by the voluntary act of the plaintiff, the case is removable, but if not, then the case is not removable because the dismissal is still subject to review on appeal." *Sparrock v. Hartford Life & Accident Ins. Co.*, 2015 WL 13298388, at *2 (D. Mass. Mar. 27, 2015) (citing *Universal Truck & Equip. Co. v. Southworth-Milton, Inc.*, 765 F.3d 103, 108 (1st Cir. 2014)), *rept. and recomm. adopted*, 2015 WL 13427502 (D. Mass. Apr. 24, 2015).

Here, Pivovarov's dismissal from the case did not result from a voluntary action by plaintiff. She was dismissed from the case on her own motion for lack of personal jurisdiction. Rather than consent to that dismissal, plaintiff opposed it. And even after she was dismissed, the Superior Court gave plaintiff 30 days to refile and effect service of process on her. That 30-day period had not yet run when defendant removed to this Court. Indeed, plaintiff has represented

---

corporation's principal place of business is its "nerve center"—the place "where [its] officers direct, control, and coordinate [its] activities." *Hertz Co. v. Friend*, 559 U.S. 77, 93 (2010). That place is normally the corporation's headquarters. *Id.* Defendant's registered office in Massachusetts is not its nerve center, but simply an address required by the state in order to register as a corporation here. *Cf. Buethe v. Britt Airlines, Inc.*, 787 F.2d 1194, 1196 (7th Cir. 1986) ("The registered office is just an address required by the incorporating state. It could be a mail drop or a lawyer's office."). Indeed, plaintiff's own exhibit reveals that the listed address is an office suite for CT Corporation System, rather than defendant itself. (Pl. Reply, Ex. A). Although the record before the Court is incomplete, it is highly likely, to say the least, that the principal place of business of Lufthansa is in Germany.

6

that he intends to refile and serve Pivovarov. (Pl. Reply at 2). Thus, under the voluntary-involuntary doctrine, whether this case may be removed based on diversity jurisdiction depends on Pivovarov's citizenship. *See Five Star Quality Care*, 2009 WL 1456303 at *1 (holding that removal was not authorized because dismissal for lack of personal jurisdiction was not a voluntary act of the plaintiff).

It is at least somewhat unclear whether Pivovarov is in fact a citizen of Massachusetts. The complaint alleges that she resides at 52 Central Square, #2, Lynn, Massachusetts. (Compl. ¶ 3). She has disputed that fact. (Dkt. No. 7 at 27 ¶ 6). Nonetheless, she does not deny that she lives in Massachusetts. There is a high likelihood that she resides in Lynn or a nearby community in Massachusetts. If she does, then there is not complete diversity and thus no basis for removal.

In any event, defendant bears the burden of establishing subject-matter jurisdiction, and any doubts are to be resolved against removal. *See Danca*, 185 F.3d at 4; *In re Fresenius*, 76 F. Supp. 3d at 327. Because defendant has not established that Pivovarov is *not* a citizen of Massachusetts, removal based on diversity jurisdiction was therefore inappropriate.

### B. Federal-Question Jurisdiction

Defendant also contends that this Court has federal-question jurisdiction over this case. Federal-question jurisdiction extends to cases that arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To determine whether a claim arises under federal law, courts look to the "well-pleaded" allegations of the complaint, ignoring potential defenses. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). As the Supreme Court has explained,

> [W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute[,] . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the

> bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.

*Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914).

Thus, the existence of a federal defense—including a defense that relies on the preemptive effect of a federal statute—"normally does not create statutory 'arising under' jurisdiction, and a defendant may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Aetna Health*, 542 U.S. at 207 (internal quotation and citations omitted); *see also Beneficial*, 539 U.S. at 6.

Here, there is no federal question on the face of the complaint, which alleges only violations of Massachusetts statutory and common law. Typically, that would mean that this Court lacks federal-question jurisdiction and there would be no need to go further. There is, however, a potentially applicable exception to the well-pleaded complaint rule: complete preemption.

### 1. **The Complete Preemption Doctrine**

"Complete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be recharacterized as a federal claim." *Fayard v. Northeast Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008) (emphasis omitted). Complete preemption occurs only where there is both "exclusive federal regulation of the subject matter of the asserted state claim" and "a federal cause of action for wrongs of the same type." *Id.* at 46. The Supreme Court has identified a narrow group of such areas, including matters arising under the National Labor Relations Act, *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968); the possessory interest of Indian tribes to lands obtained by treaty, *Oneida Indian Nation of New York State v. County of Oneida*, 414 U.S. 661 (1974); matters arising under ERISA, *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58

8

(1987); and usury claims against federally chartered banks, *Beneficial*, 539 U.S. 1.

Defendant contends that plaintiff's claims here are completely preempted by (1) the Montreal Convention, Convention on the Unification of Certain Rules of International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106–45, 2242 U.N.T.S. 309 (entered into force Nov. 4, 2003), and (2) the Airline Deregulation Act of 1978, 49 U.S.C. § 41713.

### 2. The Montreal Convention

The Montreal Convention is an international treaty governing liability for the "international carriage of persons, baggage or cargo performed by aircraft." Art. 1. It preempts certain state-law causes of action in cases arising out of international air travel. *See El Al Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169 (1999) (interpreting predecessor treaty).[3] In the place of state-law claims, the Convention establishes a unified system of rules regarding passenger claims for personal injury, wrongful death, property loss, and damages resulting from a transportation delay. Montreal Convention, Arts. 17-19. It sets conditions for such claims as well as limits on a claimant's recovery. *Id.*, Arts. 21-22.

The Montreal Convention provides an affirmative defense to state-law claims. However, neither the Supreme Court nor the First Circuit has decided whether it completely preempts them.[4] The lower courts that have reached the issue are split. *Jensen v. Virgin Atl.*, 2013 WL 1207962, at *3 (N.D. Cal. Mar. 25, 2013). *Compare Rocha v. American Jets, Inc.*, 2014 WL

---

[3] *Tseng* dealt with a predecessor to the Montreal Convention, the Warsaw Convention. *See* Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11 (entered into force Feb. 13, 1933) ("Warsaw Convention"). However, the *Tseng* court "did not confront a complete preemption defense and consequently, did not address the issue of whether removal was proper under the complete preemption doctrine." *Jensen v. Virgin Atl.*, 2013 WL 1207962, at *3 n.2 (N.D. Cal. Mar. 25, 2013).

[4] Those are two separate questions. Complete preemption occurs only where "Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be recharacterized as a federal claim. . . . so permitting removal." *Fayard*, 533 F.3d at 45 (emphasis omitted). "By contrast, ordinary preemption—*i.e.*, that a state claim conflicts with a federal statute—is merely a *defense* and is not a basis for removal." *Id.* (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 115-16 (1936)).

12626317, at *3 (S.D. Fla. Nov. 17, 2014) (Montreal Convention does not completely preempt state-law claims); *id.* (same); *Zatta v. Societe Air France*, 2011 WL 2472280, at *2-3 (C.D. Cal. June 21, 2011) (same); *Narkiewicz-Laine v. Scandinavian Airlines Sys.*, 587 F. Supp. 2d 888, 890 (N.D. Ill. 2008) (same) *with Schoeffler–Miller v. Northwest Airlines, Inc.*, 2008 WL 4936737, at *3 (C.D. Ill. Nov. 17, 2008) (Montreal Convention completely preempts state-law claims); *Knowlton v. American Airlines, Inc.*, 2007 WL 273794, at *3-5 (D. Md. Jan. 31, 2007) (same); *In re Air Crash at Lexington*, 501 F. Supp. 2d 902, 909-913 (E.D. Ky. 2007) (same). Courts that have considered the preemptive effect of the Montreal Convention's predecessor treaty, the Warsaw Convention, have also reached different conclusions. *Compare Husmann v. TWA, Inc.*, 169 F.3d 1151, 1152-53 (8th Cir. 1999) (holding that the Warsaw Convention completely preempted state-law tort claims) *with Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 781 (7th Cir. 2008) (holding that the Warsaw Convention "simply operate[s] as an affirmative defense").

However, this Court need not decide whether the Montreal Convention has a complete preemptive effect, because defendant has not shown that it applies to plaintiff's claims. Three provisions of the Convention establish the liability of airlines to their passengers: Articles 17, 18, and 19. *Jensen*, 2013 WL 1207962, at *3 n.3. Defendant contends that plaintiff's claims fall under Article 17 and Article 19. Thus, the Convention can create federal-question jurisdiction only if Article 17 or 19 applies.

Article 17 makes airlines liable for personal injuries that occur on board their aircraft or in the course of embarking or disembarking, and for damage to baggage that occurs on board their aircraft or while the bag is in their charge. Montreal Convention, Art. 17; *see also id.* Plaintiff does not allege any damage to his baggage. He does, however, allege that he suffered

emotional distress, which caused him pain, sleeplessness, and nightmares. (Compl. ¶ 42).

However, defendant has not shown that plaintiff's alleged injuries occurred while he was on board or embarking the aircraft. Plaintiff clearly never made it on board the aircraft in Lagos. But it is unclear whether he suffered his purported injuries while "embarking" within the meaning of Article 17. For the purposes of making that determination, the First Circuit has outlined a "three-pronged inquiry":

> The inquiry focuses on (1) the passenger's activity at the time of injury, (2) his or her whereabouts when injured, and (3) the extent to which the carrier was exercising control at the moment of injury. . . . We do not view the[se] three factors—activity, location, and control—as separate legs of a stool, but, rather, as forming a single, unitary base. In the last analysis, the factors are inextricably intertwined.

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 317 (1st Cir. 1995). It is hard to tell from the complaint or notice of removal precisely when and where plaintiff was told that he could not board his flight. (See Compl. ¶¶ 8-9). Depending on the circumstances, he may or may not have been "embarking" within the meaning of Article 17. If he was turned away at the check-in counter when he presented his travel documents, he was not embarking. *Kalantar v. Lufthansa German Airlines*, 276 F. Supp. 2d 5, 12-13 (D.D.C. 2003) (citing *McCarthy*, 56 F.3d at 317). If he was brought to a customer-service desk and told that he could not board while in a common area inside the terminal, he likely was not embarking. *See McCarthy*, 56 F.3d at 317-18. But if he was already lined up for boarding or entering the jetway, he may have been embarking for the purposes of Article 17. *See Marotte v. American Airlines, Inc.*, 296 F.3d 1255, 1260-61 (11th Cir. 2002) (holding that a passenger who was walking from the boarding gate to the jetway was embarking); *Hansen v. Delta Airlines*, 2004 WL 524686, at *6 (N.D. Ill. Mar. 17, 2004) (concluding that whether a passenger who "reached the boarding line" for her flight was embarking turned on disputed facts).

11

In any event, it is unclear on this record whether Article 17 applies, and therefore defendant has not met its burden.

Similarly, defendant has not shown that Article 19 applies. "The plain language of Article 19 of the Montreal Convention indicates that it governs claims for delay, not nonperformance." *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 455 (E.D.N.Y. 2007). "[W]here a plaintiff claims total nonperformance of the contract, courts scrutinize the facts to determine whether the claim, however founded, actually arose out of a delay in transportation." *Kamanou-Goune v. Swiss Int'l Airlines*, 2009 WL 874600, at *4 (S.D.N.Y. Mar. 27, 2009). Several courts have held that where an airline prevents a plaintiff from boarding a flight and does not offer alternate travel arrangements, then the plaintiff's claim arises out of nonperformance and is not preempted by Article 19. *See Wolgel v. Mexicana Airlines*, 821 F.2d 442, 444-45 (7th Cir. 1987) (interpreting parallel provision in Warsaw Convention); *Nankin v. Continental Airlines, Inc.*, 2010 WL 342632, at *6-8 (C.D. Cal. Jan. 29, 2010); *Kamanou-Goune*, 2009 WL 874600, at *5; *In re Nigeria Charter*, 520 F. Supp. 2d at 454-56. At least on the present record, that appears to be the case here. There is no indication in the record that defendant offered plaintiff alternate travel arrangements or an opportunity to cure any defects with his travel documents. Thus, defendant has not met its burden to show Article 19 applies.

Accordingly, even assuming that the Montreal Convention completely preempts certain types of state-law claims, defendant has not shown that it applies to the claims asserted here. The Convention therefore does not provide a basis for federal-question jurisdiction.

### 3. The Airline Deregulation Act of 1978

The Airline Deregulation Act of 1978 ("ADA") "largely deregulated domestic air transport." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995). "To ensure that the

states would not undo federal deregulation with regulation of their own, the ADA included a preemption clause." *Id.* (quoting *Morales v. TWA, Inc.*, 504 U.S. 374, 378-379 (1992)). That clause prohibits the states from enforcing any law "related to a price, route, or service of an air carrier. . ." 49 U.S.C. § 41713. States thus may not impose additional obligations on airline prices, routes, or services, although they may enforce those already contained in contracts with passengers. *See Morales*, 504 U.S. at 386-87 (holding state law regulating advertising of airline fares was preempted). *Compare Wolens*, 513 U.S. at 227-28 (holding state consumer-protection law regulating airline business practices was preempted) *with id.* at 230-232 (holding state contract law was not preempted in action to enforce frequent flyer awards).

While the Supreme Court has held that the ADA's preemptive effect can serve as an affirmative defense to state-law claims, neither it nor the First Circuit has decided whether the ADA completely preempts such claims. However, the Supreme Court has said in *dicta* that it does not. In *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), the Court decided the preemptive scope of the ADA as a defense but did not deal with its effect in removal cases. Nonetheless, the Court expressed doubt that it completely preempted state-law claims:

> Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services. The ADA contains no hint of such a role for the federal courts. In this regard, the ADA contrasts markedly with the ERISA, which does channel civil actions into federal courts, under a comprehensive scheme, detailed in the legislation, designed to promote prompt and fair claims settlement.

*Wolens*, 513 U.S. at 232 (internal citations and quotations omitted). Relying on that language, several courts of appeals have held that the ADA is merely a defense to state-law claims and does not completely preempt them. *See Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184 (9th Cir. 2002); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 925-926 (5th Cir. 1997); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1251-52 (6th Cir. 1996). At

13

least one district court in the First Circuit has reached the same result. *See Salinas Asphalt, Inc. v. Expeditors Int'l (P.R.), Inc.*, 2011 WL 13350173, at *4 (D.P.R. Mar. 18, 2011).

First Circuit law supports that conclusion. The First Circuit has observed that complete-preemption doctrine applies "in only a few contexts." *Fayard*, 533 F.3d at 45. And it has held that a federal statute may completely preempt state-law claims only if it supplies "a federal cause of action for wrongs of the same type." *Fayard*, 533 F.3d at 45. The ADA does not. *Wayne*, 294 F.3d at 1184.

Based on the Supreme Court's *dicta* in *Wolens*, decisions by three federal courts of appeals, and First Circuit law, this Court concludes that the ADA does not completely preempt state-law claims. Accordingly, the statute does not provide a basis for removal jurisdiction under the complete preemption doctrine.[5]

In summary, defendant has not met its burden of proving that this Court has either diversity jurisdiction or federal-question jurisdiction over this matter. Removal was therefore improper, and remand to the Superior Court is appropriate.

### C. Attorney's Fees and Costs

Plaintiff has requested that the court allow for an award of attorney's fees and costs to plaintiff upon remand. Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." It is clearly established that "absent unusual circumstances, attorney's fees should not be awarded under § 1447(c) when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).

---

[5] Even if the ADA did provide a basis for removal jurisdiction, there would be a separate question of whether it applies to plaintiff's state-law claims here. *See Wolens*, 513 U.S. at 230-32 (holding that the ADA did not preempt state contract law in action to enforce frequent flyer awards). The Court does not reach that question.

Plaintiff here contends that defendant lacked an objectively reasonable basis for removal. The Court disagrees. One of the grounds for defendant's removal was that the Montreal Convention creates federal-question jurisdiction under the complete-preemption doctrine—a contention that has not yet been addressed by the First Circuit but that has persuaded at least several federal courts. While that argument did not succeed here, at a minimum it provided an objectively reasonable basis for the removal here. Accordingly, plaintiff will not be awarded attorney's fees and costs.

## III. Conclusion

For the foregoing reasons, plaintiff's motion to remand is GRANTED. Plaintiff's request for attorney's fees is DENIED. The case is hereby REMANDED to the Massachusetts Superior Court.

**So Ordered.**

/s/ F. Dennis Saylor, IV
F. Dennis Saylor, IV
Dated: December 5, 2019        United States District Judge